# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

**Civil Action No. 25-cv-02658-RTG**

YELYZAVETA DEGTIAROVA,
Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
Defendant.

_____

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

_____

## INTRODUCTION

Plaintiff Yelyzaveta Degtiarova respectfully submits this Opposition to Defendant JPMorgan

Chase Bank, N.A.'s ("Chase Bank") Motion to Dismiss.

Chase Bank seeks to excuse its prolonged refusal to release  Plaintiff's inheritance  by relying on

a foreign court order issued by a Russian commercial tribunal. That order has no legal force in the

United States and cannot override Chase Bank's domestic contractual duties or U.S. banking laws.

In choosing to follow Russian law to protect its corporate interests abroad, Chase Bank acted

voluntarily, not under compulsion of any U.S. statute or regulation. The result is an ongoing

deprivation of a U.S. citizen's property without due process—conduct that violates American law,

public policy, and fundamental fairness.

For twelve months, Chase Bank has relied on shifting and contradictory explanations to justify its

conduct, while Plaintiff has been deprived not only of her property but also of her peace of mind,

1

financial stability, and fundamental rights. In effect, Chase Bank wrongfully withheld Plaintiff's money. Defendant's actions violate not only established principles of U.S. banking and contract law, but also basic standards of morality and common sense.

VTB Bank, a Russian state-controlled financial institution, has obtained multiple court orders against Chase Bank and its affiliated entities. Each of those orders specifically identifies Chase Bank (and its affiliates), their monetary funds, and their property as the subject of the freeze. None of the orders extends the freeze to any third parties—such as other companies or individual customers.

Chase Bank calls this case "unfortunate," but it is unfortunate only because of Chase Bank's actions. The case should not even exist if Chase Bank had followed the law.

If this were "simply put," as stated in Chase Bank's Motion to Dismiss, then why did Chase Bank use contradictory, shifting, and false explanations to Plaintiff—first claiming Chase Bank did not have her money; then that she needed to speak to a personal banker; later that sanctions prevented processing her wire; and finally that a Russian court freeze was the reason? Plaintiff never received a single clear or consistent answer from Chase Bank during the entire year. The only communications providing any information were responses compelled through formal CFPB complaints filed by Plaintiff.

**This case concerns more than the release of a single wire transfer.** It goes to the core of how a major financial institution treats its customers—whether a U.S. bank may invoke opaque, foreign proceedings to withhold a client's money, provide shifting and contradictory explanations, and avoid transparency and accountability. The duties at issue are not merely mechanical; they include

the bank's obligations of candor, good faith, and fair dealing in its relationship with a consumer who entrusted it with her inheritance.

For these reasons, Defendant's Motion must be denied in its entirety.

## I. PLAINTIFF'S COMPLAINT STATES A VALID CLAIM

At the pleading stage, the Court must accept all factual allegations as true. *Bell Atl. Corp. v. Twombly*, *550 U.S. 544, 555 (2007).*

Plaintiff alleges: (1) a valid deposit relationship; (2) Chase Bank's failure to credit or release her inheritance funds; and (3) financial losses, tuition debt, and emotional distress caused by the non-payment. These facts establish plausible claims for breach of contract, conversion, and bad-faith banking practices. Nothing in Chase Bank's motion negates these essential elements.

## II. CHASE BANK'S RELIANCE ON RUSSIAN LAW IS INVALID UNDER U.S. LAW

### A. Foreign Judgments Have No Automatic Force in the United States

Chase Bank argues it was "bound" to comply with a Russian freeze order. That assertion is legally incorrect. Foreign judgments have no effect in U.S. courts unless formally recognized under principles of comity only when they comport with due process. *Ackermann v. Levine*, 788 F.2d 830, 840–42 (2d Cir. 1986) (foreign judgments must meet due process standards and not offend fundamental fairness). The Russian freeze order has never been domesticated or recognized by any U.S. court or agency.

In addition, Chase Bank's invocation of a Russian court order is a misrepresentation of foreign law and cannot justify its conduct. *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de*

*C.V. v. Pemex-Exploración y Producción*, *832 F.3d 92 (2d Cir. 2016)* (foreign annulments disregarded where they undermine contractual rights and public policy).

**B. Chase Bank Followed Foreign Law Voluntarily to Protect Its Business Interests**

Chase Bank's own motion admits its "compliance" was intended to protect its affiliates and assets in Russia—not to satisfy any U.S. legal obligation. Such voluntary self-restraint cannot discharge contractual duties owed under U.S. law. See *Bank of Augusta v. Earle*, *38 U.S. (13 Pet.) 519 (1839)* (foreign laws have no extraterritorial effect).

**C. The Russian Court Itself Clarified That Client Funds Were Not Frozen**

In its Motion to Dismiss, Defendant cites an order of the Arbitration Court of St. Petersburg and Leningrad Region, asserting that this order demonstrates the lawful seizure of Plaintiff's funds. Defendant attached this order as Exhibit A to its Motion (Case No. A56-37388/2024, dated April 22, 2024). However, in a subsequent decision dated April 27, 2024, in the same case (№ A56-37388/2024), the St. Petersburg Arbitration Court expressly clarified that its earlier freeze order of April 22, 2024, against JPMorgan Chase Bank applied **only** to the Bank's own corporate funds. The court stated in ¶ 24:

"The court did not impose arrest on funds belonging to other persons, including the Bank's clients." (Russian: «Арест на денежные средства, принадлежащие иным лицам, в том числе клиентам Банка, суд не накладывал.»). See Exhibit A.

This language makes clear that the Russian freeze order did not extend to depositor or client funds.

Accordingly, Chase Bank has no factual or legal basis to seek dismissal of this case or to continue justifying its refusal to release Plaintiff's inheritance. The foundation of Defendant's Motion to Dismiss rests entirely on a misinterpretation of a foreign court order that, on its face, does **not** prohibit the release of Plaintiff's funds. Chase Bank's defense therefore fails as a matter of law and fact.

Plaintiff also submits, as Exhibit B, the written confirmation from Russian attorney Irina Bubnova (Moscow Region Bar Association), which independently confirms that the Russian court freezes apply solely to Chase Bank's own assets and not to its clients' funds.

Thus, even under Russian law, Plaintiff's inheritance was never frozen.

Notwithstanding these undeniable facts, Plaintiff continues to address Defendant's assertions—solely to illustrate how far this case has strayed from reality, and how one of the largest banks in the United States has distorted facts and misrepresented foreign proceedings in an attempt to evade its obligations under U.S. law and to its clients.

### III. PLAINTIFF'S FUNDS ARE SUBJECT TO U.S. JURISDICTION AND LAW

Chase Bank contends that because the rubles "never reached the United States," U.S. law does not apply. That argument fails.

1. The payment order identified Chase Bank as the beneficiary institution. Once Chase Bank or its correspondent bank accepted the transfer, Chase Bank became legally obligated to complete the credit under UCC Article 4A (§ 4A-404).

2. Chase Bank is a single national bank chartered under U.S. law, not a collection of independent foreign entities. See *Wachovia Bank v. Schmidt*, *546 U.S. 303 (2006)*. Its Russian affiliate acts as a correspondent, not a separate sovereign actor.

3. The place of performance of the banking obligation is the United States. Therefore, Chase Bank's duties are governed by U.S., not Russian, law.

## IV. CHASE BANK CITES NO U.S. LAW MAKING PERFORMANCE UNLAWFUL

Chase Bank repeatedly asserts it would "violate the law" by releasing funds. It identifies no U.S. statute, regulation, executive order, or OFAC directive prohibiting Plaintiff's transfer. The only "law" at issue is a foreign commercial order between Russian entities. U.S. courts do not excuse breach of contract based on foreign business risks or considerations.

Chase Bank's decision to over-comply with Russian proceedings was a commercial choice, not a legal impossibility. See Restatement (Second) of Contracts § 261. (no discharge where a party's inability is self-induced).

## V. THE DEPOSIT ACCOUNT AGREEMENT (DAA) DOES NOT EXCUSE CHASE BANK'S CONDUCT

Chase Bank relies on boilerplate clauses allowing it to decline transactions due to "circumstances beyond our control." Those provisions are unenforceable here because:

1. The "circumstance" (a foreign freeze order) was foreseeable and arose from Chase Bank's voluntary foreign operations.

2. The DAA is a U.S. contract, not governed or expanded by foreign law; its interpretation is governed exclusively by U.S. law.

3. Interpreting the DAA to allow permanent deprivation of customer funds would render it unconscionable and contrary to public policy.

Banks cannot invoke form language to nullify their fiduciary duties of good faith and fair dealing owed to depositors.

## VI. CHASE BANK MISSTATES UCC ARTICLE 4A OBLIGATIONS

Under UCC § 4A-105(5), a "receiving bank" includes any bank to which a payment order is issued, directly or indirectly. Chase Bank, as the intended beneficiary institution, is part of that chain and owes a duty to credit the funds under § 4A-404(a).

Even if its Moscow affiliate initially received the payment, that affiliate acted as Chase Bank's agent, and Chase Bank remains responsible for final crediting in the United States.

## VII. CHASE BANK'S STATEMENTS ABOUT THE WIRE TRANSFER ARE CONTRADICTORY AND UNDERMINE ITS ENTIRE DEFENSE

Chase Bank now asserts that "the wire was sent from Raiffeisen to J.P. Morgan Bank International (JPMBI), Moscow, where it was restricted per the Freeze Order. The wire was never transmitted to Chase Bank and thus Chase Bank had no obligations under the UCC whatsoever." (Def. Mot. to Dismiss).

However, this statement directly contradicts Chase Bank's own written responses to the Consumer Financial Protection Bureau (CFPB) during Plaintiff's prior complaints. In multiple CFPB filings

between November 2024 and April 2025, Chase Bank explicitly stated: "We received a wire transfer for 7,790,574.20 RUB on October 30, 2024." See Exhibit C.

This language is unequivocal. Chase Bank admitted that it received the transfer. Once Chase Bank received those funds—even through its correspondent network—it became obligated under UCC Article 4A to complete the payment order and credit Plaintiff's account.

A financial institution cannot "receive" funds for the purpose of representing itself to regulators and then deny receipt when facing liability in federal court. Such inconsistent statements constitute admissions of a party opponent under Fed. R. Evid. 801(d)(2) and demonstrate that Chase Bank is attempting to mislead this Court.

If Chase Bank's assertion were true—that the funds "never reached" Chase Bank—then its CFPB responses were materially false or misleading and would constitute a deceptive practice under 12 U.S.C. § 5531(a). Conversely, if the CFPB statements were true, Chase Bank's motion is built on a false premise. Either way, Chase Bank cannot use contradictory narratives to avoid judicial accountability.

This inconsistency alone warrants denial of dismissal and, at minimum, limited discovery to resolve where the funds are held and under whose control.

## VIII. CORRESPONDENCE FROM JPMORGAN BANK INTERNATIONAL (MOSCOW) CONFIRMS THAT THE TRANSFER REACHED CHASE BANK'S ACCOUNT

Chase Bank's assertion that "the wire was never transmitted to Chase Bank" is also contradicted by information already in Plaintiff's possession. Plaintiff has received written correspondence

from JPMorgan Bank International (Moscow) ("JPMBI") confirming that the transfer of 7,790,574.20 Russian rubles was executed in full and credited to the correspondent account of JPMorgan Chase Bank, N.A., maintained with JPMorgan Bank International. That correspondence further states that the intermediary bank had no grounds to return the funds and fulfilled its obligations.

JPMBI also stated to Plaintiff: "The JPMBI (Bank) possesses no information regarding the reasons for the failure to credit the US dollar funds to your account opened with JPMorgan Chase Bank in the United States. The client relationship between you and JPMorgan Chase Bank falls outside the jurisdiction and competence of this Bank. The crediting of US dollar funds to your account at JPMorgan Chase Bank may be effected solely by JPMorgan Chase Bank itself, where your account is maintained and of which you are a client."

This correspondence demonstrates that the funds did, in fact, reach Chase Bank's account, triggering Chase Bank's obligations under UCC Article 4A (§ 4A-404) to credit the beneficiary. Plaintiff will submit this documentation during discovery or upon the Court's request, but even without attachment, its contents directly refute Chase Bank's statement that the wire "never reached" it. At this procedural stage, the Court must accept Plaintiff's factual allegations as true. Accordingly, Chase Bank's argument that it bears no liability under the UCC is unsupported and contradicted by information already in the record.

## IX. CHASE BANK'S CLAIM THAT THE FREEZE ORDER REQUIRES INDEFINITE HOLDING OF CLIENT FUNDS IS FALSE AND LEGALLY UNTENABLE

Chase Bank asserts that "Per the Freeze Order, any ruble credits Chase Bank receives must be held indefinitely." (Def. Mot. to Dismiss.) That statement is both factually inaccurate and legally unsustainable.

First, no such language exists in the Russian freeze order. The original ruling (Case No. A56-99242/2024) simply imposed a temporary arrest on Chase Bank's corporate assets within the Russian Federation in connection with commercial proceedings involving VTB Bank. It did not—and could not—order Chase Bank to indefinitely hold the private funds of third-party clients located outside Russia, which would exceed the Russian court's jurisdiction.

Second, the Russian court later clarified this exact issue. In its April 27, 2024 decision (Case № A56-37388/2024, ¶24), the court expressly stated: "The court did not impose arrest on funds belonging to other persons, including the Bank's clients".

Thus, Chase Bank's claim that the freeze order mandates holding Plaintiff's inheritance "indefinitely" is a fabrication—unsupported by any Russian or U.S. legal documents.

Third, even if the Russian order had said that (which it did not), no U.S. law permits a domestic bank to indefinitely withhold a depositor's money without court authorization or due process. Under U.S. contract and banking principles, a bank's obligation to its customer is absolute once funds are received. Prolonged or permanent withholding constitutes a breach of contract and conversion.

Finally, Chase Bank's argument would lead to an absurd result—that a foreign court could compel a U.S. national bank to permanently freeze the property of U.S. citizens without notice, appeal, or

compensation. Such a theory is inconsistent with both American sovereignty and constitutional due process protections.

Accordingly, Chase Bank's "indefinite hold" defense is not only false in fact but repugnant to U.S. law and public policy.

In addition, Chase Bank's Motion states that "In April 2024, granting an application from VTB Bank, the Arbitration Court of St. Petersburg and the Leningrad Region entered an order against Chase and eight related entities (including J.P. Morgan Bank International ("JPMBI")) to '[s]eize cash, movable and immovable property, and claims belonging to [the Chase entities] and h[o]ld by them or other persons' in the amount of $439,468,033.12."

Read carefully, that language undermines Chase Bank's position. The key phrase is "belonging to [the Chase entities]." Chase Bank suggests that "held by them or other persons" somehow includes Plaintiff's funds; in reality, the order targets property belonging to Chase Bank, not customer funds that Chase Bank happens to hold. Chase Bank again twists language to mislead.

## X. CHASE BANK'S SHIFTING EXCUSES SHOW NO INTENTION TO RELEASE FUNDS

When Plaintiff directly asked Chase Bank whether a Russian court order lifting the freeze would allow the transfer to be processed, Chase Bank's response was evasive: it stated that "the account freeze is still in place" and recited generic language from the Deposit Account Agreement authorizing it to "decline or prevent any or all transactions." This refusal to give any commitment, timeframe, or assurance of release demonstrates that Chase Bank's reliance on a foreign court

order is a pretext, not the true barrier. The Bank has no intention of releasing Plaintiff's funds, which is why this matter requires judicial oversight and discovery.

## XI. POTENTIAL FOR CLASS TREATMENT REQUIRES JUDICIAL FORUM

This dispute may involve more than just Plaintiff's account. If other Chase Bank customers were subjected to similar improper  freezes, the case could warrant class treatment.    The only way to determine if  others  were  harmed  is  to allow  this  case  to proceed in federal  court  through discovery.

## XII. CHASE BANK'S OWN FILINGS CONFIRM IT IS LITIGATING IN RUSSIA TO PROTECT ITS OWN ASSETS—NOT PLAINTIFF'S FUNDS

Chase Bank admits in its Motion that, "Following rejection by the Russian Court of Appeal, Chase recently appealed to the Court of Cassation, the next level of Russian appellate review." (Def. Mot. to Dismiss.) This confirms that Chase Bank is actively pursuing its own commercial appeals in Russia to lift restrictions on its corporate assets, not to release Plaintiff's inheritance. At no point has Chase Bank taken action in Russia—or in the United States—to protect Plaintiff's rights or seek the release of her funds.

Moreover, Chase Bank never disclosed this information to Plaintiff during the past year. Despite multiple written requests for updates and documentation, Chase Bank concealed the existence of these foreign proceedings. The Bank also failed to provide Plaintiff with copies of the Russian court orders or any notice of how she could challenge the alleged freeze. Instead, Plaintiff was repeatedly misled through false explanations—at various times being told she was under sanctions, that an OFAC license was required, or that Russian authorities were blocking the funds. Relying

on these misrepresentations, Plaintiff was forced to take unnecessary and burdensome steps, including applying for an OFAC license, contacting Russian financial institutions (both the sender and correspondent banks), and hiring a Russian attorney to investigate these matters independently. Chase Bank's sustained failure to communicate truthfully while continuing to withhold Plaintiff's inheritance demonstrates a deliberate pattern of concealment, bad faith, and lack of transparency.

In effect, Chase Bank has appropriated Plaintiff's inheritance for its own benefit—using it as leverage or collateral within its foreign legal strategy. By invoking Russian litigation as a shield, while privately advancing its own financial interests, Chase Bank has behaved as though Plaintiff's money were its own. In practical and moral terms, Chase Bank has stolen Plaintiff's funds and then attempted to justify the theft under the guise of "foreign compliance."

Such conduct violates every principle of good faith and fair dealing embedded in U.S. banking law and public policy. A bank's first obligation is to its depositor—not to protect its overseas assets at the customer's expense. Accordingly, Chase Bank's ongoing Russian litigation provides no legal defense. It only underscores that Chase Bank's actions were self-interested, deceptive, and unlawful under U.S. standards of fiduciary duty and consumer protection.

## XIII.  STANDING AND ONGOING HARM

This is not a short delay. Chase Bank withheld Plaintiff's inheritance for one year. That alone demonstrates ongoing harm, bad faith, and a plausible breach.

Plaintiff easily satisfies *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

- **Injury in fact:** deprivation of inheritance funds and emotional distress

- **Traceability:** directly caused by Chase Bank's refusal to release funds

- **Redressability:** fully remediable through a court order compelling payment.

The injury continues daily. Chase Bank's ongoing refusal exacerbates Plaintiff's financial hardship, emotional suffering, and loss of trust in the U.S. banking system.

## XIV. PUBLIC INTEREST AND FAIRNESS REQUIRE DENIAL OF DISMISSAL

Allowing dismissal here would legitimize Chase Bank's attempt to substitute foreign obligations for its domestic duties under U.S. law. It would signal that large financial institutions may unilaterally apply foreign freezes to U.S. citizens' accounts, bypassing American oversight. This Court's jurisdiction provides the only meaningful forum for due process review and consumer protection. Justice, public policy, and the integrity of U.S. law demand that the case proceed to discovery and adjudication on the merits.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant's Motion to Dismiss in its entirety. In the alternative, should the Court find any pleading deficiency, Plaintiff requests leave to amend under Fed. R. Civ. P. 15(a)(2) to conform to the evidence and ongoing harm.

**Respectfully submitted,**
Dated: October 16, 2025

s/Yelyzaveta Degtiarova
Plaintiff, Pro Se

925 N. Lincoln St. apt 11H Denver, CO 80203

Ph.720-388-5536, Natasha.wig17@gmail.com

14

**CERTIFICATE OF TYPE-VOLUME LIMITATION COMPLIANCE**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standard III(A)(1).

*s/* Yelyzaveta Degtiarova
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on 10/16/2025, I filed the foregoing **Plaintiff's Opposition to Defendant's**

**Motion to Dismiss** with the Clerk of Court using the CM/ECF system, which will send notification

to Defendant's counsel of record.

*s/* Yelyzaveta Degtiarova
Plaintiff, Pro Se



Exhibit A
Case No. A56-37388/2024 translated
Page 1

**ARBITRATION COURT OF THE CITY OF SAINT PETERSBURG AND LENINGRAD REGION**

**191124, Saint Petersburg, Smolny St., 6**

**http://www.spb.arbitr.ru**

**ORDER**

City of Saint Petersburg

April 27,  2024                                              Case No. A56-37388/2024

The operative part of the order was announced on April 27, 2024.
The full text of the order was prepared on April 27, 2024.

Judge of the Arbitration Court of Saint Petersburg and Leningrad Region — S.S. Saltykova.
Court clerk — N.V. Strembitskaya.

Having examined in a court session the case upon the claim of:
VTB Bank (Public Joint Stock Company)

against

JPMorgan Chase Bank N.A.,
Commercial Bank "J.P. Morgan Bank International" (Limited Liability Company),
JPMorgan Chase & Co.,
J.P. Morgan Capital Holdings Limited,
J.P. Morgan Limited,
JPMorgan Chase Bank N.A., London Branch,
J.P. Morgan International Finance Limited,
J.P. Morgan Securities PLC,
JPMorgan Emerging Europe, Middle East & Africa Securities PLC

for the joint recovery of losses in the amount of USD 439,468,033.12,

without summoning the parties,

the Court established the following:

VTB Bank (Public Joint Stock Company) applied to the Arbitration Court of Saint Petersburg and the Leningrad Region with a claim against the above-listed defendants for the joint recovery of USD 439,468,033.12 in losses and RUB 200,000 in state duty expenses.

By an order dated April 22, 2024, the court adopted interim measures.

The court received from Commercial Bank "J.P. Morgan Bank International" (LLC) an application for cancellation of the interim measure in the form of seizure of monetary funds of the bank, or alternatively, for substitution of the interim measure with the following:

"Prohibition imposed on Commercial Bank 'J.P. Morgan Bank International' (LLC) to transfer, alienate, encumber, or otherwise dispose of its property, the book value of which at the moment of applying the interim measures exceeds 5% of the total book value of all assets, except for operations connected with its normal business activity (including, but not limited to, payment of salaries, payment of taxes, fees, and other obligatory payments, payment of utilities and rent, other payments related to compliance with the legislation of the Russian Federation and the Bank of Russia), as well as operations related to client payments whose accounts are not under arrest."

After studying the presented documents, the court established the following:

In substantiation of its request to cancel interim measures, the Applicant stated that the measures imposed by the court create a threat of suspension of its economic activity, which may lead to bankruptcy of the organization. The Applicant also stated that it did not take and does not take any actions to withdraw assets from the territory of the Russian Federation, and the claims against it are unfounded.

The Applicant indicated that the total assets of the bank amount to 243.3 billion rubles, of which 204.7 billion rubles are funds in "C-type" accounts accumulated at the Deposit Insurance Agency, which, in accordance with Presidential Decrees No. 8 dated January 3, 2024, and No. 244 dated April 8, 2024, cannot be seized or subjected to enforcement; 36.6 billion rubles are on accounts at the Bank of Russia; and 24.6 billion rubles are the Applicant's own funds.

According to Article 90 of the Arbitration Procedural Code of the Russian Federation (APC RF), upon the request of a person participating in the case, the arbitration court may apply urgent temporary measures aimed at securing the claim or the property interests of the applicant (interim measures). Such measures are permitted at any stage of the arbitral process if non-application could complicate or make impossible the enforcement of the court's decision or to prevent significant harm to the applicant.

Under Article 97 of the APC RF, security for a claim may be canceled by the arbitration court upon request of a party. The question of cancellation must be resolved within five days from the receipt of such application, usually without notice to the parties.

Referring to Paragraphs 33–34 of Resolution No. 15 of the Plenum of the Supreme Court of the Russian Federation dated June 1, 2023, "On certain issues regarding the adoption of measures for securing claims," the court stated that interim measures may be canceled by the court either upon its own initiative or upon the request of participants in the case, particularly when circumstances arise showing there is no further need to maintain such measures.

Pursuant to Paragraph 5(1) of Presidential Decree No. 95 of March 5, 2022 (as amended by Decree No. 8 of January 3, 2024), "On the temporary procedure for fulfilling obligations to certain foreign creditors," funds and securities in "C-type" accounts cannot be seized, subjected to enforcement, or restricted by other interim measures.

Given that the Applicant maintains such an account, the court concludes that the interim measures imposed by the order of April 22, 2024, in the form of seizure of monetary funds of Commercial Bank "J.P. Morgan Bank International" (LLC), are subject to partial cancellation, specifically the seizure is lifted from the funds in the correspondent C-type account of the bank.

The Applicant further argued that the imposed measures fully suspend the bank's operations, making it impossible to pay salaries, taxes, utilities, rent, and other mandatory payments.
The court recognized the necessity of expenses for salaries and tax payments as undisputed and found no grounds to assume that such payments could constitute unjustified withdrawal of funds.
Therefore, in this part, the petition is granted.

However, the Applicant did not provide evidence of lease agreements that would confirm rent and utility payment obligations. Therefore, the court did not lift the arrest on funds intended for rent and utility payments.

The Applicant also stated that after the seizure of the bank's funds, it would be unable to execute client payments (including taxes, utilities, rent, and salaries of clients' employees).

**The court notes that the Order of April 22, 2024, imposed arrest only on funds, movable and immovable property, and claims belonging to the defendants.**
**The Court did not impose arrest on funds belonging to other persons, including clients of the Bank.**
**This is directly indicated in the second paragraph of the operative section of that order,**

**which specifies that seizure is imposed "on funds, movable and immovable property, and claims belonging to the defendants, including but not limited to…" followed by a list of such property.**

Accordingly, this portion of the Applicant's request is found unfounded.

Based on Articles 95 and 97 of the Arbitration Procedural Code of the Russian Federation, the Court has ordered:

> To partially satisfy the application of Commercial Bank "J.P. Morgan Bank International" (LLC) for cancellation of interim measures.
>
> To lift the seizure imposed by the Order of the Arbitration Court of Saint Petersburg and Leningrad Region dated April 22, 2024, in Case No. A56-37388/2024, in part concerning:
>
> - o funds in C-type accounts opened in the name of the Bank, and
>
> - o funds intended for the payment of employee salaries, and for payment of taxes, fees, and other mandatory payments.
>
> To deny the remaining part of the application for cancellation of interim measures.
>
> To deny the application for substitution of interim measures.

An appeal may be filed with the Thirteenth Arbitration Appellate Court within one month from the date of issuance of this order.

Judge: S.S. Saltykova
(Electronic signature valid)



5113/2024-225378(2)



Exhibit A
Case No. A56-37388/2024 original
Page 5

# Арбитражный суд города Санкт-Петербурга и Ленинградской области

191124, Санкт-Петербург, ул. Смольного, д.6
http://www.spb.arbitr.ru

# ОПРЕДЕЛЕНИЕ

*г.Санкт-Петербург*
***27 апреля 2024 года***                                                    ***Дело № А56-37388/2024***

Резолютивная часть определения объявлена  27 апреля 2024 года.
Полный текст определения изготовлен  27 апреля 2024 года.

**Судья  Арбитражного суда города Санкт-Петербурга и  Ленинградской области
Салтыкова С.С.**

при ведении протокола судебного заседания секретарем судебного заседания
Стрембицкой Н.В.

рассмотрев в судебном заседании дело по иску:
Банка ВТБ (публичное акционерное общество)
к JPMORGAN CHASE BANK N.A., Коммерческому банку "ДЖ.П. МОРГАН БАНК
ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью), JPMORGAN CHASE &
CO, J.P. MORGAN CAPITAL HOLDINGS LIMITED, J.P. MORGAN LIMITED,
JPMORGAN CHASE BANK N.A., London branch, J.P. MORGAN INTERNATIONAL
FINANCE LIMITED, J.P. MORGAN SECURITIES PLC, JPMORGAN EMERGING
EUROPE, MIDDLE EAST & AFRICA SECURITIES PLC
о взыскании солидарно 439 468 033,12 долларов США убытков
без вызова сторон

# у с т а н о в и л :

Банк ВТБ (публичное акционерное общество) обратился в Арбитражный суд
города Санкт-Петербурга и Ленинградской области с исковым заявлением к
JPMORGAN CHASE BANK N.A., Коммерческому банку "ДЖ.П. МОРГАН БАНК
ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью), JPMORGAN CHASE &
CO, J.P. MORGAN CAPITAL HOLDINGS LIMITED, J.P. MORGAN LIMITED,
JPMORGAN CHASE BANK N.A., London branch, J.P. MORGAN INTERNATIONAL
FINANCE LIMITED, J.P. MORGAN SECURITIES PLC, JPMORGAN EMERGING
EUROPE, MIDDLE EAST & AFRICA SECURITIES PLC о взыскании солидарно
439 468 033,12 долларов США убытков, 200 000 руб. судебных расходов по оплате
государственной пошлины.
Определением от 22.04.2024 суд принял обеспечительные меры.
В суд от Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ"
(общество с ограниченной ответственностью) поступило заявление об отмене
обеспечительной меры в виде наложения ареста на денежные средства Коммерческого
банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной
ответственностью) или о замене обеспечительной меры в виде:

Exhibit A
Case No. A56-37388/2024 original
Page 6

2                                                                A56-37388/2024

"Наложения ареста на денежные средства на всех банковских счетах, в том числе корреспондентских и иных счетах, открытых на имя Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) в любой валюте в кредитных организациях в пределах суммы 439 468 033,12 долларов США или эквивалентной суммы в рублях или иной иностранной валюте по официальному курсу ЦБ РФ на дату наложения ареста"

на "Запрет Коммерческому банку "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) уступать, отчуждать, обременять и иным образом распоряжаться принадлежащим ему имуществом, балансовая стоимость которого на момент принятия обеспечительных мер составляет более 5% балансовой стоимости всех активов, за исключением операций, связанных с его обычной хозяйственной деятельностью (включая в том числе выплату заработной платы, уплату налогов, сборов и иных обязательных платежей, оплату коммунальных услуг и арендной платы, иных платежей связанных с выполнением требований законодательства РФ и Банка России), а также связанных с проведением платежей клиентов, чьи счета не находятся под арестом".

Исследовав представленные документы, суд установил следующее.

В обоснование ходатайства об отмене обеспечительных мер Заявитель указывает, что принятые судом обеспечительные меры создают угрозу остановки осуществления его хозяйственной деятельности, что приведет к возможному банкротству организации. Одновременно Заявитель отметил, что он не предпринимает и не предпринимал мер по выводу активов с территории Российской Федерации, предъявленные к нему исковые требования являются необоснованными.

Заявитель указывает, что размер активов Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) составляет 243,3 млрд. руб., из которых 204,7 млрд. руб. представляют собой средства на счетах типа «С», аккумулированные в Агентстве по страхованию вкладов, на которые в соответствии с Указами Президента от 03.01.2024 № 8 и № 244 от 08.04.2024 не может быть наложен арест и обращено взыскание, на счетах Заявителя в Банке России находится 36,6 млрд. руб., собственные средства Заявителя составляют 24,6 млрд. руб.

Согласно статье 90 АПК РФ по заявлению лица, участвующего в деле, арбитражный суд может принять срочные временные меры, направленные на обеспечение иска или имущественных интересов заявителя (обеспечительные меры). Обеспечительные меры допускаются на любой стадии арбитражного процесса, если непринятие этих мер может затруднить или сделать невозможным исполнение судебного акта, а также в целях предотвращения причинения значительного ущерба заявителю.

Арбитражный суд признает заявление стороны о применении обеспечительных мер обоснованным, если имеются доказательства, подтверждающие наличие хотя бы одного из оснований, предусмотренных частью 2 статьи 90 АПК РФ.

Согласно статье 97 АПК РФ обеспечение иска по ходатайству лица, участвующего в деле, может быть отменено арбитражным судом, рассматривающим дело. Вопрос об отмене обеспечения иска разрешается в судебном заседании в пятидневный срок со дня поступления заявления в арбитражный суд в порядке, предусмотренном статье 93 АПК РФ, а в силу части первой указанной статьи заявление рассматривается арбитражным судом без извещения сторон.

Исходя из разъяснений, изложенных в пункте 33 постановления Пленума Верховного Суда Российской Федерации от 01.06.2023 N 15 "О некоторых вопросах принятия судами мер по обеспечению иска, обеспечительных мер и мер предварительной защиты" (далее - Постановление Пленума ВС РФ N 15) обеспечительные меры могут быть отменены судом по собственной инициативе либо по

заявлению лиц, участвующих в деле (часть 1 статьи 144 ГПК РФ, часть 1 статьи 89 КАС РФ, часть 5 статьи 3 АПК РФ).

Согласно пункту 34 Постановления Пленума ВС РФ N 15 суд вправе отменить обеспечительные меры, в том числе если после принятия таких мер появились обстоятельства, свидетельствующие об отсутствии необходимости их сохранения. Содержащееся в части 4 статьи 96 АПК РФ указание на то, что обеспечительные меры действуют до фактического исполнения судебного акта, не препятствует их отмене, если по результатам рассмотрения заявления лица об отмене обеспечительных мер суд пришел к выводу об отсутствии оснований для их дальнейшего применения.

Перечень случаев, при которых обеспечительные меры могут быть отменены, законом не предусмотрен. Вместе с тем из анализа правовых норм, регулирующих порядок и основания применения обеспечительных мер, следует, что данный вопрос разрешается судом в каждом конкретном случае с учетом всех обстоятельств дела.

По смыслу статей 90, 93, 97 АПК РФ, отмена принятой судом обеспечительной меры возможна в тех случаях, когда отпали обстоятельства, послужившие основанием для ее принятия, либо появились новые обстоятельства, обосновывающие необходимость отмены меры обеспечения иска.

Таким образом, при рассмотрении ходатайства об отмене обеспечительных мер суд повторно проверяет наличие оснований для применения обеспечительных мер и необходимости их сохранения исходя из критериев, применяемых при разрешении вопроса о принятии обеспечительных мер, в том числе учитываются публичные интересы и интересы третьих лиц.

Согласно пункту 5 (1) Указа Президента РФ от 05.03.2022 №95 (в редакции Указа Президента РФ от 03.01.2024 N 8) "О временном порядке исполнения обязательств перед некоторыми иностранными кредиторами" на средства и ценные бумаги, учитываемые на счете типа "С", не может быть обращено взыскание по исполнительным документам, наложен арест и в отношении их не могут быть приняты иные обеспечительные меры.

Принимая во внимание предоставленную Заявителем информацию о том, что на имя Заявителя в соответствии с вышеприведенными положениями открыт банковский счет типа "С", суд приходит к выводу, что принятые определением от 22.04.2024 обеспечительные меры в виде наложения ареста на денежные средства Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью), подлежат частичной отмене, а именно: отменяется арест в части денежных средств, находящихся на корреспондентском счете типа "С" Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью).

Кроме того, в обоснование ходатайства Заявитель указывает, что принятые обеспечительные меры полностью приостанавливают осуществление хозяйственной деятельности Банка, делая невозможным осуществление ряда необходимых хозяйственно-экономических операций, в том числе выплату заработной платы, уплату налогов и обязательных платежей, оплату коммунальных услуг и арендной платы, иных платежей, связанных с выполнением требований законодательства РФ и Банка России. Арест денежных средств на расчетном счете Банка приводит к невозможности выплаты заработной платы, что непосредственно нарушает права третьих лиц - работников Заявителя.

Необходимость несения расходов по выплате заработной платы своим сотрудникам и уплате налогов в процессе хозяйственной деятельности Заявителя не вызывает каких-либо сомнений, как нет и оснований полагать, что путем перечисления соответствующих денежных средств Заявителем может быть осуществлен

необоснованный вывод денежных средств. В этой связи в данной части ходатайство также подлежит удовлетворению.

В части указываемых Заявителем арендных платежей и коммунальных платежей суд отмечает, что Заявителем не представлено доказательств заключения соответствующих договоров аренды, из которых можно было бы установить контрагентов Заявителя по арендным отношениям и наличие обязанности нести дополнительно к арендной плате расходы по коммунальным платежам.

В этой связи суд не может исключить из-под ареста до предъявления соответствующих обосновывающих документов денежные средства, направляемые на оплату арендных и коммунальных платежей.

Также Заявитель указывает, что  после ареста денежных средств банка он не сможет осуществлять платежи клиентов, включая уплату налогов, коммунальных услуг и арендной платы российских клиентов и выплату заработной платы их работникам.

Вместе с тем, суд отмечает, что определением от 22.04.2024 наложен арест на денежные средства, движимое и недвижимое имущество, права требования, принадлежащие ответчикам.

Арест на денежные средства, принадлежащие иным лицам, в том числе клиентам Банка, суд не накладывал, так, в абзаце втором резолютивной части определения указано на то, что накладывается арест «на денежные средства, движимое и недвижимое имущество, права требования, принадлежащие ответчикам, в том числе, но не исключительно:» и далее идет перечисление такого имущества.

В этой части заявление об отмене обеспечительной меры суд также находит необоснованным.

В соответствии с частью 1 статьи 95 АПК РФ арбитражный суд вправе по ходатайству истца или ответчика, исходя из анализа конкретных обстоятельств и в целях реального обеспечения исполнения судебного акта, заменить один вид обеспечения иска другим.

При рассмотрении заявления о замене обеспечительных мер арбитражный суд обязан проверить наличие оснований, установленных частью 2 статьи 90 АПК РФ, для принятия как первоначальных обеспечительных мер, так и вновь истребуемых в порядке замены мер по обеспечению иска.

Согласно разъяснениям, изложенным в пункте 31 постановления Пленума Верховного Суда РФ от 01.06.2023 N 15 "О некоторых вопросах принятия судами мер по обеспечению иска, обеспечительных мер и мер предварительной защиты", замена одних обеспечительных мер другими допускается в порядке, предусмотренном процессуальным законодательством, в частности, если ранее установленная мера перестала быть достаточной для обеспечения возможности исполнения решения суда либо когда эта мера значительно ущемляет права ответчика или ему могут быть причинены убытки, которых можно избежать. Обязанность представить доказательства наличия таких обстоятельств возложена на лицо, ходатайствующее о замене (часть 1 статьи 56 ГПК РФ, часть 1 статьи 65 АПК РФ, часть 1 статьи 62 КАС РФ).

В рассматриваемом случае такие основания отсутствуют, в связи с чем суд отказывает в удовлетворении ходатайства о замене обеспечительных мер.

Руководствуясь статьями 95, 97 Арбитражного процессуального кодекса Российской Федерации

**о п р е д е л и л :**

заявление коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) об отмене обеспечительных мер удовлетворить частично.

5

A56-37388/2024

Отменить обеспечительные меры, наложенные определением Арбитражного суда города Санкт-Петербурга и Ленинградской области от 22.04.2024 по делу № А56-37388/2024 в части наложения ареста на денежные средства на банковские счета типа «С», открытые на имя Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью), а также в части наложения ареста на принадлежащие Коммерческому банку "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) денежные средства, предназначенные для выплаты заработной платы работникам Коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью), уплаты Коммерческим банком "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) налогов, сборов и иных обязательных платежей.

В удовлетворении остальной части заявления об отмене обеспечительных мер отказать.

В удовлетворении заявления коммерческого банка "ДЖ.П. МОРГАН БАНК ИНТЕРНЕШНЛ" (общество с ограниченной ответственностью) о замене обеспечительных мер отказать.

На определение может быть подана апелляционная жалоба в Тринадцатый арбитражный апелляционный суд в срок, не превышающий месяца со дня его вынесения.

Судья                                                                                С.С.Салтыкова

Электронная подпись действительна.
Данные ЭП:  Удостоверяющий центр Казначейство России
Дата 14.03.2023 3:27:00
Кому выдана Салтыкова Светлана Сергеевна

## STATEMENT

by attorney Iryna Bubnova in the interests of Yelyzaveta Degtiarova.

I, attorney Iryna Bubnova, confirm that I have reviewed the judicial decisions issued by the arbitration courts of the Russian Federation in cases against JPMORGAN CHASE BANK N.A., JSCB "J.P. Morgan Bank International" and its affiliated entities (hereinafter "Chase Bank"):

- Order No. A56-99242/2024, dated October 14, 2024
- Order No. A56-99251/2024, dated October 15, 2024
- Order No. A56-24289/2025, dated March 25, 2025
- Order No. A56-37388/2024, dated April 22, 2024
- Order No. A56-37388/2024, dated April 27, 2024
- Order No. A41-88750/2024, dated October 1, 2024

As a result of analyzing these judicial acts, the following has been established:

The courts, in considering claims against Chase Bank, imposed interim measures in the form of arrest (freezing) of monetary funds belonging **only to the defendant in the given cases**, and not to the Bank's clients and their monetary funds.

The referenced rulings contain no provisions infringing the lawful rights, monetary funds, or properties of Chase Bank's clients, including Yelyzaveta Degtiarova, since these individuals are not defendants in the proceedings—either jointly with Chase Bank or separately.

Accordingly, the measures of responsibility and restrictions arising from these judicial acts apply **exclusively to Chase Bank** as a legal entity, and not to its clients, regardless of the location or currency of their accounts.

Additionally, I inform you that I conducted a consultation with the bailiff-executor handling the relevant enforcement proceedings. The bailiff confirmed that enforcement measures are directed solely against Chase Bank and do not extend to the accounts or assets of individuals—the Bank's clients. Yelyzaveta Degtiarova is not a party to the enforcement proceedings.

This statement is prepared to confirm the legal position that Yelyzaveta Degtiarova bears no obligations and is not subject to any restrictions arising from the judicial decisions issued against Chase Bank.

Copies of the judicial acts may be provided upon request.

Attorney registration number: a/к 050/02412
Moscow Region Bar Association.

Bubnova I.

Date: September 11, 2025

(Official seal/stamp of the Moscow Region Bar Association confirming attorney authority)

Case No. 1:25-cv-02658-DDD-NRN    Document 17    filed 10/16/25    USDC Colorado
pg 27 of 31    Exhibit C
CFPB Complaint
Page 1

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

‹ All complaints (.)

# 250118-18104779

**CLOSED**

✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 1/17/2025 | Money transfer, virtual currency, or money service | Fraud or scam |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

I am opening a new case against Chase Bank regarding an ongoing issue that I have been dealing with for the past three months. Chase has refused to deposit funds into my account, citing sanctions as the reason. However, I am not subject to any sanctions, as I am a U.S. citizen and have been living in the United States for 11 years. This time, I am filing a formal discrimination case against Chase Bank. I firmly believe that I have been discriminated due to my Russian heritage, which is why the bank has refused to communicate with me entirely. Despite my repeated efforts to resolve this matter, Chase has completely ignored my inquiries. Chase has falsely accused both me and the sending bank, Raiffeisen Bank in Russia, of being subject to sanctions. This is categorically untrue, as neither of us are under any such restrictions. (Source: https://home.treasury.gov/news/press-releases/jy0608). By

Exhibit C
CFPB Complaint
Page 2

taking this stance, Chase is unfairly targeting Russian individuals living in the U.S., perpetuating a harmful stereotype that we are inherently connected to sanctions and criminal activity. This type of broad, discriminatory assumption unjustly impacts all Russian people living in the United States, treating us as though we are guilty by association simply because of our heritage. Chase's actions also contradict the U.S. Treasury and OFAC guidelines, which explicitly state that personal, non-commercial remittances are not subject to sanctions. According to the U.S. Department of Treasury: "Personal, non-commercial remittances are not the target of sanctions imposed by the United States on Russia." "U.S. and foreign financial institutions may continue to process transactions for legitimate activities, such as the facilitation of personal non-commercial remittances, that do not involve blocked persons and are not otherwise prohibited by OFAC." (Source: OFAC FAQs: https://ofac.treasury.gov/faqs/added). By disregarding these guidelines and failing to act in good faith, Chase has engaged in discriminatory practices that undermine the rights of Russian Americans. This case involves a significant amount of money, and Chase should be held accountable for its discriminatory actions, its failure to follow established U.S. regulations, and the false information it provided in response to my previous complaint. Chase is engaging in fraudulent practices by falsely accusing me of being under sanctions without any legitimate basis or evidence.

**ATTACHMENTS**

secure message from Chase to me to contact Sender bank .pdf (23.6 KB)

Dec 22 Formal Demand Letter .pdf (99.7 KB)

official letter to Jeremy Barnum.pdf (72.3 KB)

Secure message Dec 12.pdf (29.2 KB)

View full complaint ⊕

 **Sent to company**

**STATUS**

Sent to company on 1/17/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

Exhibit C
CFPB Complaint
Page 3

 **Company
still working**

**STATUS**

Company
response is in
progress as of
1/31/2025

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response
within 60 days from the date we sent your complaint to the company.

---

**COMPANY'S INTERIM RESPONSE**

We're still working on your request and will provide a response
as soon as we complete our research. Thank you for your
patience.

 **Company
responded**

**STATUS**

Company
responded
on
3/10/2025

**RESPONSE
TYPE**

Closed with
explanation

## Company's Response

Thank you for expressing your concerns to the Consumer
Financial Protection Bureau. We appreciate you allowing us the
opportunity to research this matter. We completed our review,
and the details of our response are below. • We appreciate you
taking the time to tell us about our service. Your feedback helps
us serve you better. Our goal is to provide you with exceptional
service, and we are sorry if we fell short this time. • We take
complaints that claim discrimination seriously. We do not tolerate
any form of discrimination as it is strictly against our policy and
contrary to our corporate culture. • We received a wire transfer
for 7,790,574.20 RUB on October 30, 2024. These funds are
being held because there is currently a litigation freeze on
JPMorgan Chase Bank N.A.'s accounts in Russia, which prohibits
us from processing transactions out of Russia. This suspension

Exhibit C
CFPB Complaint
Page 4

will remain in effect until further notice as a result of the judicial proceedings in Russia. Until the Russian issued judicial freeze is lifted, we cannot process payments from Russia to the United States. • We confirmed these funds are not being held as a result of sanctions, and we apologize for any misinformation you received in that regard. • There are many reasons we may decline or prevent transactions to or from your account; we generally do it to protect you or us, or to comply with legal requirements. For more information, please see the Deposit Account Agreement. You were provided a copy of the agreement when you opened the account. You can see the current agreement by signing into your account on chase.com.



# Feedback requested

**STATUS**

Feedback requested on 3/10/2025

**FEEDBACK DUE**

5/9/2025

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

**Submit your feedback**



# Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Exhibit C
CFPB Complaint
Page 5

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

 An official website of the United States Government