IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02658-DDD-NRN

YELYZAVETA DEGTIAROVA,

     Plaintiff,

v.

JPMORGAN CHASE BANK N.A.,

     Defendant.

---

## REPORT AND RECOMMENDATION ON
## MOTION TO DISMISS BY JPMORGAN CHASE BANK, N.A. (ECF No. 16)

---

**N. REID NEUREITER**
**UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court pursuant to an Order, ECF No. 18, issued by Judge Daniel D. Domenico referring JPMorgan Chase Bank, N.A.'s ("Chase Bank") Motion to Dismiss, ECF No. 16, filed on October 14, 2025. Plaintiff Yelyzaveta Degtiarova ("Plaintiff" or "Ms. Degtiarova") filed her response on October 16, 2025. ECF No. 17. Chase Bank filed a reply on October 30, 2025. ECF No. 19. With leave of Court, Plaintiff filed a sur-reply on October 31, 2025. ECF No. 20. The Court heard oral argument on December 9, 2025. *See* ECF No. 26.

The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court makes the following recommendation.

## I.    BACKGROUND[1]

Plaintiff brings this lawsuit seeking the release of funds from a wire transfer to her account which are currently being retained by Chase Bank. Following the death of Plaintiff's relatives in Russia, she inherited multiple properties, which she subsequently sold. On October 30, 2024, a wire transfer was initiated to send the resulting inheritance proceeds—totaling 7,790,574.20 Russian rubles (roughly the equivalent of $101,500.00) —from Raiffeisen Bank in Russia to Plaintiff's account at Chase Bank in the United States. To date, Plaintiff's funds from her incoming wire transfer have not been released to her.

Plaintiff alleges that she "made repeated efforts to engage Chase Bank through every available channel . . . . All of them were ignored, blocked, or dismissed without substantive response." ECF No. 1 at 3. She spent several hours between November 2024 and March 2025 on the phone with Chase Bank representatives and even attempted to contact Chase Bank executives directly. Finally, on March 10, 2025, Chase Bank informed Plaintiff that the funds in question were frozen due to a "litigation-related freeze on [Chase Bank]'s accounts in Russia, which purportedly prevented them from processing transactions originating in Russia." *Id.* at 4.

Chase attributes the delay in forwarding Plaintiff's funds to an arbitration order emanating from Russia. On April 22, 2024, the Arbitration Court of St. Petersburg and Leningrad Region entered an order against Chase Bank and eight related entities—

---

[1] Unless otherwise stated, all factual allegations are taken from the Complaint, ECF No. 1, and all non-conclusory allegations are presumed true for the purposes of the pending motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

including J.P. Morgan Bank International ("JPMBI")—to "seize cash, movable and immovable property, and claims belonging to [the Chase entities] and held by them or other persons" in the amount of $439,468,033.12 USD (the "Freeze Order"). *See* ECF No. 16-1 at 4 .[2] The Russian court ordered the seizure of "funds in all bank accounts, including correspondent and other accounts, opened in the name of [the Chase entities] in any currency . . . . " *Id.* Chase Bank argues that per the Freeze Order, "any ruble credits Chase receives must be held indefinitely—preventing Chase from converting rubles to USD, crediting domestic deposit accounts like [Plaintiff]'s or even returning transfers to originating banks. . . . [Plaintiff]'s incoming wire was not singled-out, but was unfortunately swept in by the Freeze Order." ECF No. 16 at 3. In its motion, Chase Bank states that it is currently in the process of appealing the Freeze Order. *Id.* Chase Bank further argues that if it is successful in its challenge and the Freeze Order is lifted, Plaintiff, along with other impacted customers, will re-gain access to the restricted funds. *Id.*

In her Complaint, Plaintiff challenges whether the Freeze Order is "so broad" as to extend to customer accounts. She argues that Chase had "both the capacity and the duty to distinguish between its own institutional assets and the private funds of U.S.

---

[2] The Court takes judicial notice of the English translation of the Russian court freeze order of April 22, 2024, which was submitted by Chase Bank along with their motion. The authenticity of the original document and the provided English translation do not seem to be disputed by Plaintiff. Judicial notice may be taken during any stage of the judicial proceeding, including the stage of a motion to dismiss. *See* 21B C. Wright & K. Graham, *Federal Practice & Procedure* § 5110, at 294 & n.17 (2d ed. 2005). And while ordinarily a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

customers." ECF No. 1 at 9. Along with her sur-reply, Plaintiff submitted a certified English translation of a clarifying order (the "Clarifying Order") that was issued by the same court on April 27, 2024. *See* ECF No. 20-2.[3] Importantly, Plaintiff notes that the Clarifying Order states that "[t]he Court did not impose the seizure on the monetary funds belonging to other persons, including the clients of the Bank . . . ." Interpreting this ruling, Plaintiff argues that the Freeze Order of April 22, 2024 applies only to Chase Bank's own corporate funds and does not extend to the accounts of third-parties such as herself.

Based on the alleged unlawful retention of her funds, Plaintiff brings the following claims against Chase Bank: (1) Violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and Regulation E (12 C.F.R. Part 1005); (2) Violation of UCC Article 4A (Funds Transfers), including § 4A-212; (3) Breach of Contract; (4) Negligence; (5) Breach of Fiduciary Duty and Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Conversion; (7) (in the alternative) Unjust Enrichment; and (8) Intentional Infliction of Emotional Distress ("IIED"). *See generally* ECF No. 1.

In terms of relief, Plaintiff seeks (1) injunctive and declaratory relief ordering Chase Bank to release the funds from the October 30, 2024 wire transfer to Plaintiff's account; (2) compensatory damages in the amount of $750,000; (3) damages for emotional distress; (3) punitive damages; (5) statutory damages as authorized under EFTA and Regulation E; and (6) attorney fees and costs along with pre- and post-judgment interest. *Id.* at 13–14.

---

[3] The Court takes judicial notice of the submitted Clarifying Order.

## II.    LEGAL STANDARDS

### a.  Pro Se Plaintiff

Ms. Degtiarova is proceeding pro se. The Court, therefore, "review[s her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S.*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle her to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### b.  Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court

reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

### III.   ANALYSIS

#### a.   Claim One: Violation of the EFTA and Regulation E

The EFTA seeks to protect consumers who "use . . . electronic systems to transfer funds." 15 U.S.C. § 1693. To that end, it sets forth "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id*. § 1693(b). Under Plaintiff's first claim, she alleges that Chase Bank violated the EFTA and its implementing regulation (Regulation E) by freezing her funds and failing to provide Plaintiff with "timely written notice of error resolution or explanation of her rights." ECF No. 1 at 5.

The EFTA defines an "electronic fund transfer" as "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C. F. R. § 1005.3(b)(1). Specifically excluded from coverage under the EFTA are "wire or other similar transfers," defined as "[a]ny transfer of funds through Fedwire or through a similar wire transfer system that is used primarily for transfers between financial institutions or between businesses." *Id.* § 1005.3(c)(3).

This suit concerns a wire transfer of funds sent from Raiffeisen Bank on behalf of Plaintiff, to her account with Chase Bank via an intermediary institution, JPMBI. Plaintiff does not dispute that the transaction at issue constitutes an incoming wire transfer. Chase Bank argues, and the Court agrees, that because Plaintiff's claims are based on a wire transfer, the EFTA does not apply. *See, e.g.*, *Nazimuddin v. Wells Fargo Bank, N.A.*, No. 24-20343, 2025 WL 33471, at *2 (5th Cir. Jan. 6, 2025) ("As the transfers from Nazimuddin's account were undisputedly wire transfers, they are outside the scope of the EFTA and its protections do not apply."); *McClellon v. Bank of Am., N.A.*, 2018 WL 4852628, at *6 (W.D. Wa. Oct. 5, 2018) (dismissing because EFTA does not apply to wire transfers); *Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621, at *4 (S.D.N.Y. June 22, 2009) (noting that "'wire or other similar transfers' are explicitly excluded from the definition of 'electronic fund transfer'"). Accordingly, the Court finds that Plaintiff's claim under EFTA and Regulation E should be dismissed.[4]

---

[4] Plaintiff brings this suit under federal question jurisdiction pursuant to 28 U.S.C. § 1331. Although the Court recommends dismissing Plaintiff's federal claim, the Court finds Plaintiff's claims sufficiently establish diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff is domiciled in Colorado, and Defendant JPMorgan Chase Bank, N.A. is a national banking association incorporated in Columbus, Ohio, with its principal place of

### b. Claim Two: Violation of UCC Article 4A (Fund Transfers), including § 4A-212

Claim two alleges a violation of Article 4A of the UCC, codified under Title 4 of

the Colorado Revised Statutes, which governs "fund transfers," defined as

> the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Colo. Rev. Stat. § 4-4.5-104. Chase Bank concedes that the wire transfer at issue in this

case constitutes such a funds transfer and is thus governed by the statute. ECF No. 16

at 7.

Plaintiff alleges violations under both UCC §§ 4A-404 and 4A-212 (adopted by

Colorado under Colo. Rev. Stat. §§ 4-4.5-404 and 4-4.5-212, respectively). Colo. Rev.

Stat. § 4-4.5-212 provides as follows:

> If a receiving bank fails to accept a payment order that it is obliged by express agreement to accept, the bank is liable for breach of the agreement to the extent provided in the agreement or in this article, but does not otherwise have any duty to accept a payment order or, before acceptance, to take any action, or refrain from taking action, with respect to the order except as provided in this article or by express agreement. Liability based on acceptance arises only when acceptance occurs as stated in section 4-4.5-209, and liability is limited to that provided in this article. A receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this article or by express agreement.

*Id.* "Payment order" means "an instruction of a sender to a receiving bank, transmitted

orally or in a record, to pay, or to cause another bank to pay, a fixed or determinable

_____

business in New York, New York. Additionally, the amount in controversy exceeds $75,000.

amount of money to a beneficiary . . . ." Colo. Rev. Stat. § 4-4.5-103. "Receiving bank"
means the bank to which the sender's instruction is addressed. *Id.* "Absent a contrary
agreement, no bank has any obligation to honor a payment order issued by a customer
or another bank," but "most banks have an agreement of one sort or another to accept
payment orders from particular banks or customers. The process of completing a funds
transfer to an account in a particular bank will vary depending upon the structure of the
agreements to which that bank is a party." § 85:1. Basic concepts and terminology, 2A
Colo. Prac., Methods Of Practice § 85:1 (7th ed.)

In this matter, a payment order was sent from Plaintiff to Raiffeisen Bank, then to
JPMBI (acting as an intermediary receiving bank), which subsequently forwarded the
payment order to Chase Bank. Plaintiff pleads two alternative theories: either (1) Chase
Bank wrongfully failed to accept the payment order from JPMBI, and the funds remain
(in the form of rubles) in the custody of JPMBI; or (2) Chase Bank accepted the
payment order and received the funds and is wrongfully refusing to release them to
Plaintiff. The issue of which entity has actual possession of the funds is disputed by the
parties.

Under the first theory, Plaintiff alleges that Chase Bank, acting as both the
receiving bank and the beneficiary's bank, wrongfully failed to accept the payment order
forwarded from JPMBI in violation of § 4-4.5-212. While Chase Bank alleges that the
Freeze Order prevented it from accepting the wire transfer from JPMBI and crediting
Plaintiff's account, there is a non-frivolous factual dispute regarding exactly what the
Russian court order means and to what funds it applies. At the motion to dismiss stage,

without any expert testimony on foreign law, the Court is in no position to interpret the ruling from a foreign court.

In its motion, Chase Bank argues that § 4-4.5-212 is "simply inapplicable" because the transfer was accepted by JPMBI. ECF No. 16 at 7. The Court is not persuaded. Within the context of Plaintiff's claim under § 4-4.5-212, the "receiving bank" is Chase Bank, not JPMBI. As Plaintiff points out in her response, a "receiving bank" includes any bank to which a payment order is issued. ECF No. 17 at 7. Chase Bank raises no other arguments against Plaintiff's claim under § 4-4.5-212. Accepting the well-pled non-conclusory facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations permit an inference that Chase Bank wrongfully rejected the payment order forwarded from JPMBI. Consequently, Chase Bank's motion to dismiss Plaintiff's claim under § 4-4.5-212 should be denied.

Under Plaintiff's second theory, she pleads a violation of § 4-4.5-404, which reads as follows:

> [I]f a beneficiary's bank accepts a payment order, the bank is obliged to pay the amount of the order to the beneficiary of the order. Payment is due on the payment date of the order, but if acceptance occurs on the payment date after the close of the funds-transfer business day of the bank, payment is due on the next funds-transfer business day. If the bank refuses to pay after demand by the beneficiary and receipt of notice of particular circumstances that will give rise to consequential damages as a result of nonpayment, the beneficiary may recover damages resulting from the refusal to pay to the extent the bank had notice of the damages, unless the bank proves that it did not pay because of a reasonable doubt concerning the right of the beneficiary to payment.

*Id.* Plaintiff argues that, "to the extent [Chase Bank] accepted the payment order for Plaintiff as a beneficiary" from JPMBI, Chase Bank owed her a duty "to pay or notify the beneficiary upon acceptance." ECF No. 1 at 6. She alleges (in the alternative) that

"Chase Bank accepted the wire transfer but failed to execute the payment order, failed to credit the funds, and failed to return them to the originating bank." *Id.* She further alleges that despite her "multiple written and oral inquiries, Chase Bank did not notify Plaintiff in a lawful or timely manner of its refusal or inability to complete the transfer." *Id.* Chase Bank argues that Plaintiff has failed to allege a violation of § 4-4.5-404 because "the statute allows a beneficiary bank" "to withhold funds to comply with applicable law." ECF No. 16 at 7. In support, Chase Bank cites to § 4-4.5-503, which provides, "[f]or proper cause and in compliance with applicable law, a court may restrain . . . the beneficiary's bank from releasing funds to the beneficiary." *Id.* Chase Bank asserts that "under this exception, JPMBI (Moscow) and Chase [Bank] acted within their rights and this Article 4A claim must fail." ECF No. 16 at 8.

However, as previously discussed, the impact of the Freeze Order and whether it actually prohibits Chase Bank from releasing Plaintiff's funds to her is not something that can be decided on a motion to dismiss, especially in light of the clarifying order that Plaintiff has submitted. Accepting the well-pled allegations in the light most favorable to Plaintiff, the Court finds that, at least for the purposes of a motion to dismiss, Plaintiff has sufficiently stated a claim under § 4-4.5-404. Therefore, Chase Bank's motion to dismiss Plaintiff's claim under § 4-4.5-404 should be denied.

### c. Claim Three

#### i. Breach of Contract

Under Claim Three, Plaintiff brings a claim against Chase Bank for breach of contract. ECF No. 1 at 7. Specifically, Plaintiff alleges that Chase Bank breached the Deposit Account Agreement ("DAA"). Both parties agree that the DAA governs the

relationship between Plaintiff and Chase Bank. Plaintiff states that under the DAA, "Chase Bank undertook contractual obligations to accept and process incoming wire transfers, to credit Plaintiff's account, and to handle transactions in good faith and in compliance with applicable law." She alleges that, "[d]espite accepting the wire order, Chase Bank failed to credit the funds, failed to return them, and failed to provide Plaintiff with an effective mean of recovery" in a "material breach of its contractual duties under the DAA." *Id*.

Chase Bank argues that these "failures" were "demanded by Russian law" and "breached no provision of the DAA." ECF No. 16 at 4. It asserts that it cannot process transactions originating in Russia, and that it never converted the rubles—which, per Chase Bank, are in the custody of JPMBI in Moscow—to U.S. dollars. *Id.* at 5. Chase Bank alleges that the funds are not in the U.S., and "Russian law absolutely controls what Chase does with rubles located in Russia. Chase's actions were mandated and, therefore, any theory of liability against it fails." It further argues that the situation is "no different than circumstances where a bank cannot process a domestic transaction due to a court order." *Id.*

In support of its argument, Chase Bank references the provision in the DAA that reads, "if Chase [Bank] does not complete a transaction from your personal account on time or in the correct amount, we will be liable for your losses or damages. . . . [H]owever, [Chase Bank] is not liable for any failed transactions if . . . circumstances beyond our control prevent the transactions." ECF No. 16-3 at 13. Chase Bank also asserts that under the DAA, Plaintiff "acknowledge[s] and agree[s] that [Chase Bank] may decline or prevent any or all transactions to or from [her] account, including . . .

freezing . . . any transfer of funds" in limited circumstances. *Id.* at 22. Furthermore,

under the "General Liability" heading, the DAA reads, "[Chase Bank] will not be liable if .

. . we reasonable believe" completing a transaction "would expose us to potential loss or

civil or criminal liability." *Id.* Chase Bank takes the position that releasing the funds from

the incoming wire transfer to Plaintiff would violate the Russian court order and subject

them to liability, and therefore Chase Bank did not breach any provision of the DAA by

refusing or delaying completion of the funds transfer. For the reasons set forth below,

the Court finds that Plaintiff has failed to state a claim for breach of the DAA.

A federal court with diversity-based jurisdiction over a case applies the laws of

the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins*, 304

U.S. 64, 78 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). To

state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead

the following elements: (1) the existence of a contract; (2) performance by the plaintiff or

some justification for nonperformance; (3) failure to perform the contract by the

defendant; and (4) resulting damages to the plaintiff. *PayoutOne v. Coral Mortg.

Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (citing *W. Distrib. Co. v. Diodosio*,

841 P.2d 1053, 1058 (Colo. 1992)).

Neiter side disputes that the DAA is a valid contract between the parties.

However, Plaintiff does not point to any specific provision in the DAA to support her

breach of contract claim. While Plaintiff alleges that under the DAA, "Chase Bank

undertook contractual obligations to accept and process incoming wire transfers, to

credit Plaintiff's account, and to handle transactions in good faith and in compliance with

applicable law," it is not clear to the Court what provision of the DAA Plaintiff is referring

to. While the Court liberally construes Plaintiff's pro se filings, it does not act as her advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Accordingly, the Court finds that Plaintiff's breach of contract claim fails.

### ii. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's breach of contract claim also incorporates a claim for breach of the implied contractual duty of good faith and fair dealing. ECF No. 1 at 7. "In Colorado, every contract contains an implied duty of good faith and fair dealing." *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J*, 940 P.2d 348, 351 (Colo. 1997). The good faith doctrine is necessary to effectuate the intentions of the parties and to honor their reasonable expectations. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). "Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) (quoting *Amoco Oil Co.*, 908 P.2d at 498). For that reason, the doctrine "may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Amoco Oil Co.*, 908 P.2d at 498. "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (quoting *Amoco Oil Co.*, 908 P.2d at 498). This duty prohibits a party from exercising "discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104 (10th Cir. 2009) (citation omitted).

Plaintiff alleges that Chase Bank breached the implied covenant of good faith and fair dealing by "providing contradictory, misleading, and pretextual explanations for withholding Plaintiff's funds." ECF No. 1 at 7. Though Plaintiff does not point to a specific contract term in her pleading, in its motion, Chase Bank cites to the "General Liability" and "Blocking or Delaying Transactions" provisions of the DAA, which give Chase Bank discretion to refuse to complete certain transactions when Chase Bank "*reasonably believes*" doing so would expose Chase Bank to civil or criminal liability or other risk. *See* ECF No. 16-3 at 22 (emphasis added). Chase Bank relies on these provisions in its defense. Arguing that the Russian Freeze Order does not extend to client accounts, Plaintiff alleges that Chase Bank acted unreasonably in exercising that discretion and withholding her funds from her. At least at the motion to dismiss stage, the Court finds this is sufficient to make out a claim of breach of the implied covenant of good faith and fair dealing.

### d. Claim Five: Breach of Fiduciary Duty and Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Claim Five, Plaintiff combines her claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. She alleges that,

> as Plaintiff's depository bank, Chase Bank owed duties of loyalty, honestly, and care in safeguarding Plaintiff's funds and acting in good faith with respect to the contractual banking relationship. A special relationship of trust and confidence arose when Defendant accepted Plaintiff's wire for safekeeping and repeatedly directed Plaintiff to rely on its internal process and determinations.

ECF No. 1 at 8. However, as Chase Bank argues, "in the absence of special circumstances, the legal relationship between a lending institution and its customer is that of debtor and creditor." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1365 (Colo. App. 1994) (citing *First Nat'l Bank v. Theos,* 794 P.2d 1055

(Colo. App. 1990)); *see also Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d

504, 523 (Colo. App. 2006) ("In the absence of special circumstances, the relationship

between a lending institution and its customer is merely one of creditor and debtor.");

*Franks v. Colo. Nat'l Bank–Arapahoe*, 855 P.2d 455, 458 (Colo. App. 1993) ("A

relationship of debtor and creditor, standing alone, is insufficient to constitute a special

relationship."). The Court agrees and finds that Plaintiff's claim for breach of fiduciary

duty necessarily fails.

Under Claim Five, Plaintiff seems to bring an identical claim for breach of the

implied covenant and good faith dealing that was previously alleged under Claim Three.

Treating these allegations as one and the same, the Court finds that Plaintiff's claim for

breach of the implied covenant of good faith and fair dealing under claim five should be

dismissed as duplicative.

### a. Claims Four (Negligence), Six (Conversion). and Seven (Unjust Enrichment)

Under Plaintiff's fourth claim for negligence, she asserts that Chase Bank had a

"duty of care to properly process, handle, and safeguard incoming wire transfers." ECF

No. 1 at 7. She alleges that by accepting the payment order but failing to credit

Plaintiff's account, return the funds, or "provide accurate notice of their disposition,"

Chase Bank acted negligently in handling Plaintiff's funds. *Id*. 7–8.

Chase Bank argues that Plaintiff's common law claim of negligence is preempted

by UCC Article 4A, which governs wire transfers. Chase Bank urges the Court to follow

the reasoning in *Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, 516 F. Supp. 3d 535,

at -- (W.D.N.C. 2021), *aff'd*, No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022),

where the plaintiff's state law negligence claims concerning wire fund transfer were

dismissed as preempted by Article 4A of the UCC. The Court agrees that Plaintiff's negligence claims are preempted by the statutory framework for resolving disputes related to funds transfers.

The Official Comment to UCC § 4A–102 states, in relevant part, "[r]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." Plaintiff's negligence allegations arise out of conduct that occurred during the wire transfer and fall squarely within § 4A-212 (Liability and Duty of Receiving Bank Regarding Unaccepted Payment Order) and § 4A-404 (Obligation of Beneficiary's Bank to Pay and Give Notice to Beneficiary). Therefore, the Court finds that Plaintiff's state law negligence claims against Chase Bank should be denied as preempted by Article 4A of the UCC. As previously discussed at oral argument, Plaintiff may wish to amend her Complaint to bring a claim of negligence against Chase Bank for failure to warn or provide notice of the Freeze Order to its customers; such an allegation would concern conduct arising *before* the initiation of the wire transfer and therefore likely fall outside the scope of the UCC as adopted by Colorado.[5]

The Court finds that Plaintiff's sixth claim for conversion and seventh claim for unjust enrichment are likewise preempted by Article 4A of the UCC. In Colorado, the UCC displaces common law remedies if the UCC and the common law would provide "a means of recovery for the same loss." *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1164 (D. Colo. 2010) (citing *Clancy Sys. Int'l, Inc. v. Salazar,* 177 P.3d 1235,

---

[5] *See Nirav Ingredients*, 516 F. Supp. 3d at 539 (determining that "allegations of Wells Fargo's conduct prior to the wire transfer may proceed, but all other allegations are preempted by Article 4A").

1237 (Colo. 2008)). Both of these claims are based on the alleged wrongful exercise of control by Chase Bank over Plaintiff's incoming wire transfer—an issue that is covered by Article 4A of the UCC. *See, e.g.*, *Sunset Cmty. Health Ctr., Inc. v. Cap. One Fin. Corp.*, 652 F. Supp. 3d 1020 (D. Minn. 2023) (ruling that the plaintiff's claims against bank for conversion, civil theft, and unjust enrichment regarding bank's failure to return funds that plaintiff mistakenly wire transferred to fraudster related to rights addressed in Article 4A of the UCC and were therefore preempted).

Accordingly, the Court finds that Chase Bank's motion with respect to Plaintiff's claims for negligence, conversion, and unjust enrichment should be granted.

### b. Claim Eight: IIED

In Colorado, "[t]he elements of the tort of intentional infliction of emotional distress, otherwise known as 'outrageous conduct,' are (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966–67 (Colo. App. 2009) (Dailey, J., concurring in part and dissenting in part); *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). Chase Bank argues that Plaintiff does not sufficiently allege that it engaged in extreme or outrageous conduct. ECF No. 16 at 12.

Outrageous conduct has been defined as conduct

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and him to exclaim, "Outrageous!"

*Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).

Moreover, "[a] person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows his conduct is certain or substantially certain to have that result." *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). "A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person." *Id.* at 882–83.

"[T]he question of whether conduct is outrageous is generally one of fact to be determined by a jury[.]" *Id*. at 883. However, the Court has the responsibility "to determine whether reasonable persons could differ on the question." *Id*.

Accepting Plaintiff's factual allegations as true and construing all reasonable inferences in her favor, the Court cannot find as a matter of law that Plaintiff has sufficiently pled either intent or recklessness. Plaintiff alleges that Chase Bank's "wrongful withholding of Plaintiff's inheritance disrupted her life at a crucial stage. As a licensed realtor and a student, Plaintiff relied on these funds to invest in her career, education, and financial independence." ECF No. 1 at 11. Chase Bank's actions allegedly "severely impacted Plaintiff's ability to grow professionally, pursue her education without debt, and live with basic financial security." *Id.*

Even accepting these assertions at face-value, the Court finds that Plaintiff's allegation that Chase Bank "knew or should have known" that its conduct "would cause Plaintiff severe emotional harm" is merely conclusory. *Id.* While Chase Bank may have

inappropriately handled Plaintiff's personal funds and incorrectly interpreted the Freeze Order, there is nothing in the pleading to suggest that Chase Bank acted with *reckless disregard* of the risk of emotional distress to Plaintiff. *See Maryott v. First Nat'l Bank of Eden*, 2001 S.D. 43, 624 N.W.2d 96 (holding that although the bank's freeze on a customer's account was illegal and irresponsible, it did not rise to the level of outrageous conduct. Nor was there evidence of the bank's requisite intent). Accordingly, the Court finds that Chase Bank's motion should be granted with respect to Plaintiff's claim for IIED.

## IV.    RECOMMENDATION

The bottom line is that the Court is confronted with two arguably competing and conflicting Russian legal documents—the Freeze Order of April 22, 2024 and the Clarifying Order of April 27, 2024. If the Freeze Order stands for what Chase Bank says it does, then it most likely has a valid reason for withholding the funds from the incoming wire transfer in question. The issue here is that Plaintiff challenges Chase Bank's interpretation of the Russian court order and has submitted an English certified translation of the Clarifying Order which credibly calls into question Chase Bank's position. Without additional guidance on how to interpret the Russian court orders, the Court cannot grant Chase Bank's Motion to Dismiss in its entirety.

For the reasons set forth above, the Court **RECOMMENDS** that Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss, ECF No. 16, be **GRANTED in part and DENIED in part** as follows:

Chase Bank's motion should be **GRANTED** with respect to the following claims:

- Claim One: Violation of the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 et seq., and Regulation E (12 C.F.R. Part 1005);

- Claim Three: Breach of Contract

- Claim Four: Negligence;

- Claim Five: Breach of Fiduciary Duty and Breach of the Implied Covenant of Good Faith and Fair Dealing;

- Claim Six: Conversion;

- Claim Seven: Unjust Enrichment; and

- Claim Eight: Intentional Infliction of Emotional Distress.

Chase Bank's motion should be **DENIED** with respect to the following claims:

- Claim Two: Violation of UCC Article 4A (Funds Transfers)

- Claim Three: Breach of the Implied Covenant of Good Faith and Fair Dealing

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated at Denver, Colorado this 20th Day of February

N. Reid Neureiter
United States Magistrate Judge